[No. D046279. Fourth Dist., Div. One. May 9, 2006.]

RICHARD MANN, JR., et al., Plaintiffs and Appellants, v. QUALITY OLD TIME SERVICE, INC., et al., Defendants and Respondents.

COUNSEL

Carl M. Hancock for Plaintiffs and Appellants.

Ross, Dixon & Bell, James J. Dalessio and Lindsay J. Reese for Defendants and Respondents.

OPINION

**HALLER, Acting P. J.**—Water Systems Support, Inc., and its president (collectively WSSI) brought an action against two former independent contractors and their business entity (collectively defendants), alleging defendants violated their confidentiality agreements and made false statements about WSSI to WSSI's customers and governmental agencies. Defendants unsuccessfully moved to strike four of the 13 causes of action under California's anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc.,[1] § 425.16.) Defendants appealed, and this court held the trial court correctly denied the motion on three of the causes of action, but the court erred in denying the motion as to one cause of action. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 [15 Cal.Rptr.3d 215] (*Mann*).)

On remand, defendants sought attorney fees of $64,065 under section 425.16, subdivision (c), which states a defendant prevailing on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs." WSSI opposed the motion on several grounds, including that defendants were not prevailing parties because they were unsuccessful in striking

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

three of the four challenged causes of action. After a hearing, the court found defendants were prevailing parties within the meaning of section 425.16, subdivision (c) and awarded defendants $57,000 in attorney fees plus $1,906 in costs.

WSSI challenges the attorney fees award on appeal. We conclude the court did not abuse its discretion in determining defendants were prevailing parties on the anti-SLAPP motion. We determine, however, the court erred in failing to reduce the fees to reflect that defendants were only partially successful on the motion. Because of this court's familiarity with this case and the fact the underlying case has settled except for the attorney fees issue, we modify the order rather than remanding the matter to the trial court. We conclude defendants are entitled to $32,032.50, which is 50 percent of their claimed fees incurred in bringing the anti-SLAPP motion.

## FACTUAL AND PROCEDURAL SUMMARY

*Background Information*

WSSI's complaint alleges the following.[2] WSSI, a company that maintains industrial water systems, hired Kent Radford and Robert Caslava as independent contractors. Radford and Caslava agreed to keep confidential WSSI's customer information and work guidelines. Several years later, Radford and Caslava formed a competing company, and then solicited WSSI's customers by using the confidential information and making fraudulent and disparaging statements about WSSI, including that it used illegal and carcinogenic chemicals in its cleaning process. Defendants also allegedly engaged in numerous acts of harassment, including reporting WSSI to the National Response Center and the National Terrorist Hotline, falsely claiming that WSSI was " 'pouring illegal carcinogenic chemicals into public drainage systems throughout Southern California.' " (*Mann, supra*, 120 Cal.App.4th at p. 101.)

Based on these and additional facts, WSSI filed a complaint asserting 13 causes of action against Radford and Caslava, and their business entity. Defendants filed an anti-SLAPP motion on four of those claims: interference with contractual relationship, intentional interference with prospective economic advantage, defamation, and trade libel. Defendants argued the claims were subject to the anti-SLAPP statute because (1) defendants' reports to the government agencies were in furtherance of their constitutional right to

---

[2] Because the parties have not provided us a complete record of the underlying action, we derive the allegations of the complaint from this court's prior decision. (*Mann, supra*, 120 Cal.App.4th at pp. 100–102.)

petition the government; and (2) defendants' statements were made in connection with a "public issue." (§ 425.16, subd. (e)(2), (4).)

In opposition to the motion, WSSI filed its president's declaration, stating that defendants made false reports about WSSI to the National Response Center and the National Terrorist Hotline, and defendants had made false statements to WSSI's customers. WSSI's president denied that WSSI used illegal chemicals or poured them into city or storm drains. WSSI also filed a declaration from a WSSI client, stating that Caslava and Radford informed him that WSSI was using an illegal chemical and illegally dumping the sanitizing solution down storm drains.

The trial court denied the motion to strike, finding the challenged claims did not " 'arise from' " an act in furtherance of defendants' right of petition or free speech. On appeal, we affirmed the order denying the motion on all causes of action, except that we reversed on the trade libel cause of action. (*Mann, supra*, 120 Cal.App.4th at pp. 103–112.) In so doing, we applied well-settled law that requires a party moving to strike under the anti-SLAPP statute to show the challenged cause of action arose from a specified protected activity, and if this burden is met the plaintiff must show a probability of prevailing on the claim. (120 Cal.App.4th at p. 102.) We further followed precedent holding that the anti-SLAPP statute applies if a cause of action alleges both protected and unprotected activity unless the protected conduct is merely incidental to the unprotected conduct. (120 Cal.App.4th at p. 103.) Rejecting defendants' arguments, we clarified that an anti-SLAPP motion must be denied if the plaintiff shows a probability of prevailing on any theory underlying the "mixed" cause of action. (120 Cal.App.4th at pp. 105–106.)

Under these legal principles, we held WSSI's defamation and trade libel claims were mixed causes of action, subject to the anti-SLAPP statute because they were based, in part, on defendants' act of reporting a suspected crime to interested governmental agencies and seeking a governmental investigation. (*Mann, supra*, 120 Cal.App.4th at p. 104; see § 425.16, subd. (e)(2).) As to the reports to government agencies, we recognized they were absolutely privileged (Civ. Code, § 47, subd. (b)), thus eliminating any actionable theory arising from defendants' alleged false reports to the government. As to the statements to customers, we determined that WSSI met its burden to show a probability of prevailing on its defamation claim, rejecting defendants' evidentiary objections and contentions that their alleged wrongful communications with WSSI's customers were privileged. (*Mann, supra*, at pp. 106–109.) On the trade libel claim, we held WSSI did not show a probability of prevailing because WSSI did not present any evidence showing it had suffered a specific pecuniary loss as a result of the defendants'

communications with WSSI customers. (*Id.* at p. 109; see *Erlich v. Etner* (1964) 224 Cal.App.2d 69, 73 [36 Cal.Rptr. 256] [unlike defamation, trade libel requires evidence of specific pecuniary loss].)

On WSSI's interference claims, we held these claims were not subject to the anti-SLAPP statute because they arose from defendants' communications with WSSI's customers, and not from statements made to governmental agencies. (*Mann, supra,* 120 Cal.App.4th at p. 110.) We rejected defendants' alternate contention that the interference causes of action were subject to the anti-SLAPP statute because they were based on protected speech in connection with an issue of public interest. (120 Cal.App.4th at pp. 110–111.) We reasoned that "[a]lthough pollution . . . is a matter of general public interest, the focus of the anti-SLAPP statute must be on the specific nature of the speech rather than on generalities that might be abstracted from it. . . . [¶] . . . [D]efendants' alleged statements were not about pollution or potential public health and safety issues in general, but about WSSI's specific business practices." (*Id.* at p. 111.)

We thus affirmed the court's order to the extent it denied defendants' motion to strike the two interference claims and the defamation claim, and reversed the order to the extent it denied the motion on the trade libel claim. (*Mann, supra,* 120 Cal.App.4th at p. 112.) We awarded defendants costs on appeal. (*Id.* at p. 113.)

*Attorney Fees Proceedings*

Shortly after we remanded the case and before the parties began discovery on the merits of the remaining 12 causes of action against defendants, defendants moved in the superior court for attorney fees pursuant to section 425.16, subdivision (c), which states "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." In support, defendants' counsel submitted a billing summary showing defendants incurred attorney fees of $25,120 for time spent on the anti-SLAPP motion in the trial court, and $33,245 for time spent on the appeal. Defendants also stated they incurred $5,700 in fees for time spent in bringing the attorney fees motion. Thus, defendants sought a total of $64,065 as "prevailing parties" in the proceedings.

In a supporting declaration, defense counsel confirmed the accuracy of the time records, and stated that counsel was required to conduct "extensive research" on the issue of whether a "mixed" cause of action is subject to the anti-SLAPP statute and that each of the challenged causes of action concerned similar legal issues pertaining to the applicability of the anti-SLAPP statute. Counsel asserted that the time spent was reasonable given numerous

unsettled issues in SLAPP law at the time the case was brought and considering the "difficulty of the litigation, the skill required, the attention given to the matter, and the success of Defendants' attorneys' efforts." Counsel further stated: "We worked efficiently, but at the same time we took the necessary steps to prepare our briefing and for the oral argument before the reviewing court."

In opposing the attorney fees request, WSSI argued: (1) defendants were not the prevailing parties because the Court of Appeal affirmed the trial court's order refusing to strike three of the four challenged causes of action; and (2) even assuming defendants were "prevailing parties," the attorney fees award should be limited to reflect that defendants prevailed on only one cause of action and that they did not achieve "any level of success relative to the entire litigation."

In reply, defendants argued that the court need not decide the "prevailing party" issue because "the Court of Appeal already has decided it" by awarding defendants their costs on appeal. Defendants thus asserted that "all that remains for this Court to do is to fix the amount of the attorneys' fees and costs to be awarded . . . ."

After oral argument, the court[3] permitted the parties to file additional briefing on the apportionment issue, i.e., whether the court should award attorney fees only with respect to work performed on the successful portions of the motion. The court thereafter granted defendants' motion, awarding defendants $57,000 in attorney fees and $1,906 in costs. The court explained its ruling as follows: "Defendants ultimately prevailed on [the motion to strike] plaintiffs' trade libel cause of action. Moreover, the Court of Appeal determined that defendants are the prevailing party given the Court of Appeal found that defendants are entitled to costs on appeal. As the prevailing party, defendants are entitled to an award of reasonable attorney fees and costs pursuant to [section] 425.16. . . . [¶] . . . [¶] Apportionment of attorney fees is improper given that the same facts, law, and damages were involved in all causes of action challenged in the [anti-SLAPP motion]. The Court in this ruling, however, awards a lesser sum of attorney fees to defendants. That lesser sum is reasonable and appropriate under the circumstances of this action."

---

[3] The superior court judge (Judge Linda Quinn) considering the motion was not the same superior court judge (Judge William Pate) who had ruled on the merits of the anti-SLAPP motion.

## DISCUSSION

WSSI contends the court erred in finding that defendants were prevailing parties on the anti-SLAPP motion, and alternatively, in failing to reduce the attorney fees to reflect defendants' limited success on the motion.

### I. *Prevailing Party*

Section 425.16, subdivision (c) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."[4] Under this provision, "any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*).)

In *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993 [113 Cal.Rptr.2d 625] (*ComputerXpress*), the court considered the issue of whether a defendant who partially prevails on an anti-SLAPP motion (where the court strikes some but not all of the challenged causes of action) is a "prevailing" defendant under section 425.16, subdivision (c). (*ComputerXpress,* at pp. 1016–1020.) In examining this question, the court rejected the plaintiffs' reliance on Civil Code section 1717 and instead focused on the statutory distinction between prevailing defendants and prevailing plaintiffs. (*ComputerXpress,* at pp. 1016–1018.) Unlike a prevailing defendant who is entitled as a matter of right to attorney fees, a prevailing plaintiff is entitled to attorney fees only if the anti-SLAPP motion was "frivolous or is solely intended to cause unnecessary delay." (§ 425.16, subd. (c).) Finding this distinction reflected the Legislature's strong preference for awarding attorney fees to successful defendants, the court stated the phrase "prevailing party" should be interpreted broadly to favor an award of attorney fees to a partially successful defendant. (*ComputerXpress, supra,* at p. 1018.) The *ComputerXpress* court additionally relied on similar judicial interpretations of statutory schemes that likewise distinguish between prevailing plaintiffs and defendants in the fee-shifting analysis. (*Id.* at pp. 1018–1020; see *Hensley v. Eckerhart* (1983) 461 U.S. 424, 429 [76 L.Ed.2d 40, 103 S.Ct. 1933] (*Hensley*) [42 U.S.C. § 1988]; *Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1390–1392 [107 Cal.Rptr.2d 29] [Gov. Code, § 6259, subd. (d)]; see also *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 846 [216 Cal.Rptr. 649] [§ 1021.5].)

---

[4] Section 425.16, subdivision (c) states in full: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

Based on these authorities, the *ComputerXpress* court held the defendants were prevailing parties because they were successful in striking five of the nine challenged causes of action alleged in the complaint. (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1020.) The court stated the defendants' lack of success on a portion of the motion was relevant to the amount of fees awarded, and not on the issue of whether they were prevailing parties.[5] (*Id.* at p. 1019.) The court thus remanded for the trial court to determine the attorney fees incurred for bringing the anti-SLAPP motion challenging the causes of action stricken from the complaint. (93 Cal.App.4th at pp. 1020–1021.)

Distinguishing *ComputerXpress*, a Court of Appeal recently held the defendants who were successful in striking only one cause of action were not "prevailing" parties under the anti-SLAPP statute. (*Endres v. Moran* (2006) 135 Cal.App.4th 952, 955–956 [37 Cal.Rptr.3d 786].) In *Endres*, the plaintiffs alleged the defendants had committed numerous torts and engaged in a conspiracy as a part of a wrongful attempt to control a church. The defendants moved to strike the entire complaint under section 425.16, but were successful only as to the conspiracy cause of action. (*Endres*, at p. 954.) The trial court declined to award attorney fees to the defendants, finding that the relief granted was minimal compared to the objectives of their motion. (*Ibid.*) The appellate court affirmed, emphasizing that the defendants "accomplished nothing" by bringing the motion: "The possible recovery against defendants did not change. The factual allegations which defendants had to defend did not change. The work involved in trying the case did not change. Defendants' burden concerning their jurisdictional defense did not change. The case was essentially the same after the ruling on the special motion to strike as it was before. The results of the motion were minimal and insignificant, fully justifying the court's finding that defendants should not recover fees." (*Id.* at p. 955.)

■ We agree with the legal analysis and results reached by both the *ComputerXpress* and *Endres* courts. Given the express legislative preference for awarding fees to successful anti-SLAPP defendants, a party need not succeed in striking every challenged claim to be considered a prevailing party within the meaning of section 425.16. A contrary conclusion would require a partially prevailing defendant to bear the entire cost of the anti-SLAPP litigation at the outset of the case. This would create a strong disincentive for a defendant to bring the motion, undermining the legislative intent to encourage defendants to utilize the anti-SLAPP procedure to eliminate SLAPP claims and to discourage plaintiffs from bringing meritless SLAPP

---

[5] Unlike here, the court found the attorney work on the successful and unsuccessful claims involved discrete factual and legal theories, and therefore "the problems . . . that may arise where the successful and unsuccessful claims are legally or factually related are not present." (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1020.)

claims. (See *Ketchum, supra*, 24 Cal.4th at p. 1131.) On the other hand, there is no reason to encourage a defendant to bring an anti-SLAPP motion where the factual and legal grounds for the claims against the defendant remain the same after the resolution of the anti-SLAPP motion. (*Endres v. Moran, supra*, 135 Cal.App.4th at pp. 955–956.) Where the results of the motion are " 'minimal' " or "insignificant" a court does not abuse its discretion in finding the defendant was not a prevailing party. (*Id.* at p. 957 (conc. opn. of Mosk, J.); see *Los Angeles Times v. Alameda Corridor Transportation Authority, supra*, 88 Cal.App.4th at pp. 1391–1392.)

We thus hold that a party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion. The determination whether a party prevailed on an anti- SLAPP motion lies within the broad discretion of a trial court. (See *Jackson v. Homeowners Assn. Monte Vista Estates-East* (2001) 93 Cal.App.4th 773, 789 [113 Cal.Rptr.2d 363].) We review this determination on an abuse of discretion standard.

■ Applying these principles, we conclude the trial court did not abuse its discretion in determining defendants were prevailing parties in the underlying litigation. Defendants successfully eliminated the trade libel cause of action. Although trade libel bears similarity to the defamation claim that remained in the litigation, the two causes of action are not identical. Whereas defamation concerns injury to the reputation of a person or business, trade libel involves false disparagement of the quality of goods or services. (*Guess, Inc. v. Superior Court* (1986) 176 Cal.App.3d 473, 479 [222 Cal.Rptr. 79]; *Erlich v. Etner, supra*, 224 Cal.App.2d at pp. 73–74.) The elimination of the trade libel cause of action thus had the potential to narrow the litigation with respect to the damage issues and the focus of the claimed false statements. Additionally, the *Mann* court's acknowledgment that an absolute privilege applies to defendants' reports of WSSI's activities to government entities precluded WSSI from thereafter pursuing any recovery based on defendants' communications with government agencies. (*Mann, supra*, 120 Cal.App.4th at p. 108.) By bringing the anti-SLAPP motion, defendants thus successfully narrowed the scope of the lawsuit, limiting discovery, reducing potential recoverable damages, and altering the settlement posture of the case.

■ In its reply brief, WSSI contends that even assuming there was a factual basis for the trial court to have found defendants were prevailing parties, the order must be reversed because the trial court did not exercise its discretion on this issue. WSSI argues that the trial court erroneously based its prevailing party finding on this court's award of appellate costs to defendants in the prior appeal. (*Mann, supra*, 120 Cal.App.4th at p. 113.) We agree that

the trial court's reliance on the appellate cost award in *Mann* was improper. A "prevailing party" with respect to an appellate cost award is not necessarily the same as a "prevailing party" under the anti-SLAPP statute. (Compare § 425.16, subd. (c) with Cal. Rules of Court, rule 27.) Moreover, although a prevailing party is generally entitled to costs on appeal, appellate courts have the discretion to deviate from the general "prevailing party" rule in "the interests of justice," and make any award or apportionment of costs that it determines is appropriate. (Cal. Rules of Court, rule 27(a)(4); see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2004) ¶ 14:61, p. 14-12; see *Dobbins v. Hardister* (1966) 242 Cal.App.2d 787, 798 [51 Cal.Rptr. 866]; *Stuckey v. Stuckey* (1964) 231 Cal.App.2d 382, 387 [41 Cal.Rptr. 792].) Because the *Mann* decision was silent on the reason for the cost award, the trial court erred in inferring the award reflected a determination that defendants were the prevailing parties for purposes of the anti-SLAPP proceedings.

The court's reliance on the appellate cost award, however, was not prejudicial because it was merely an alternate basis for the trial court's conclusion on the prevailing party issue. In its written order, the court stated it found defendants were the prevailing parties based on their success in striking the trade libel cause of action. Absent a contrary indication, we presume this finding constituted an independent ground for the prevailing party finding. An order is presumed correct; all inferences are drawn in favor of the order and error must be affirmatively shown. (See *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443 [41 Cal.Rptr.2d 362, 895 P.2d 469]; *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 321 [204 Cal.Rptr. 165, 682 P.2d 360]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

## II. *Amount of Attorney Fees*

WSSI alternatively contends the court erred in refusing to reduce the claimed attorney fees to reflect that defendants were unsuccessful on three of the challenged causes of action and that these causes of action remained in the litigation after the anti-SLAPP motion was resolved.

The trial court awarded defendants $57,000, which constituted its claimed fees of $64,065 minus $7,065. The court did not explain the basis for this amount or the reduction, except to state that it found the $57,000 was

"reasonable and appropriate under the circumstances."[6] The court also expressly declined to apportion the fees between the successful and unsuccessful causes of action because it found the same legal and factual theories were involved on each of the claims.

■ The California Supreme Court has upheld the lodestar method for determining the appropriate amount of attorney fees for a prevailing defendant on an anti-SLAPP motion. (*Ketchum, supra*, 24 Cal.4th at p. 1136.) Under this method, a court assesses attorney fees by first determining the time spent and the reasonable hourly compensation of each attorney. (*Id.* at pp. 1131–1132.) The court next determines whether that lodestar figure should be adjusted based on various relevant factors (*id.* at p. 1132), including a plaintiff's limited success in the litigation (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249 [261 Cal.Rptr. 520]; *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 973–975 [259 Cal.Rptr. 599]; see also *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1674 [39 Cal.Rptr.2d 189]). In determining the lodestar amount, a prevailing party generally may not recover for work on causes of action on which the party was unsuccessful. (See *ComputerXpress, supra*, 93 Cal.App.4th at p. 1020.)

Defendants do not dispute these general principles, but contend a reduction was inappropriate in this case because the facts and law were essentially the same on the cause of action for which they were successful (the trade libel claim) and the causes of action on which they did not prevail (the defamation and interference claims). They argued below, and the court agreed, that because the legal work on each of the causes of action was overlapping, apportionment was improper because it was not possible to separate the claims. They rely on judicial interpretations of various fee-shifting statutes, in which the courts have held that attorney fees need not be reduced for work on unsuccessful claims if the claims "are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687 [98 Cal.Rptr.2d 263]; see, e.g., *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83] [Civ. Code, § 1717]; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [94 Cal.Rptr.2d 448] [Civ. Code, § 1788.30].)

Although we recognize that courts have frequently adhered to the general rule of nonapportionment if claims are overlapping, we are not bound by these decisions because they concern different attorney fee statutes. The issue

---

[6] Although a more detailed explanation would certainly have been helpful, a trial court is not required to issue a statement of decision with regard to a fee award, unless a party timely requests one. (See *Ketchum, supra*, 24 Cal.4th at p. 1140.)

of the proper amount of fees to be awarded when an attorney's time is attributable to recoverable and nonrecoverable claims depends on the legislative intent and policies underlying the specific fee-shifting scheme at issue. (See *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 504–505 [14 Cal.Rptr.3d 467] [interpreting Cartwright Act to hold that fees on common issues should not be awarded to defendant on contract claims because the award would undermine legislative intent underlying the Cartwright Act]; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 811 [16 Cal.Rptr.3d 374, 94 P.3d 513] [*Brandt* fees may not be obtained for all attorney services even if claims are overlapping]; *Hensley, supra,* 461 U.S. 424 [court should reduce for partial success even where work on claims was overlapping (*Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796])]; *Hensley, supra,* 461 U.S. 424 [court should reduce for partial success even where work on claims was overlapping].) In examining this issue in the context of section 425.16, subdivision (c), we find instructive the United States Supreme Court's decision in *Hensley, supra,* 461 U.S. 424.

The *Hensley* court considered an attorney fees award to the prevailing plaintiffs in a federal civil rights action under which a prevailing plaintiff is presumptively entitled to fees. (*Hensley, supra,* 461 U.S. at p. 429; see 42 U.S.C. § 1988.) Although the plaintiffs prevailed on some claims but not others, the district court awarded the plaintiffs their fees attributable to all claims because the court found overlapping factual and legal issues involved in those claims and a reduction would fail to "consider" several relevant factors, including " 'the relative importance of various issues' " and " 'the extent to which [plaintiffs] [prevailed] on [the] issues.' " (461 U.S. at p. 438.) The Supreme Court held that because of "the interrelated nature of the facts and legal theories," the district court "did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues." (*Ibid.*) The court, however, remanded the case for the court to exercise its discretion as to whether the attorney fee award should be reduced to account for the plaintiffs' lack of success on several claims. The court explained that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. *But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.*" (*Id.* at p. 440, italics added.) In conducting this analysis, a court "may attempt to identify specific hours that should be eliminated, *or it may simply reduce the award to account for the limited success.*" (*Id.* at pp. 436–437, italics added.)

Accordingly, under *Hensley*, a partially prevailing party is not necessarily entitled to all incurred fees even where the work on the successful and unsuccessful claims was overlapping. (*Hensley, supra,* 461 U.S. at p. 440; see *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1312 [39 Cal.Rptr.3d 589].) Instead, the court must consider the significance of the overall relief obtained by the prevailing party in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved. (*Hensley*, at p. 440.)

■ Although *Hensley* interpreted the federal civil rights statute, the court's approach is consistent with the policies underlying the anti-SLAPP statute. The fee-shifting provisions of section 425.16, subdivision (c) were enacted to impose litigation costs on those who assert meritless claims burdening the exercise of the defendant's constitutional free speech and petition rights. (*Ketchum, supra,* 24 Cal.4th at p. 1131.) The Legislature also sought to encourage private representation for defendants who might not otherwise have the financial resources to retain an attorney. (*Ibid.*) However, when a defendant is only partially successful in challenging portions of the complaint, these policies to ensure prompt and meaningful redress for the defendants subject to SLAPP suits must be balanced with the *plaintiff's* constitutional right to petition for redress of his or her claims. If, after a court rules on an anti-SLAPP motion, a partially successful plaintiff is required to bear the entire cost of the anti-SLAPP litigation even though the defendant achieved only a relatively minor benefit and the essential thrust of the plaintiff's complaint remains viable, this could impose a potential financial barrier to the plaintiff continuing with the lawsuit, burdening the plaintiff's right to exercise his or her right to petition for the redress of grievances. The Legislature recently declared that "there has been a disturbing abuse of Section 425.16 . . . which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," and that it is "contrary to the purpose and intent of Section 425.16" to "chill[]" a plaintiff's petitioning rights through the use of the anti-SLAPP procedure. (§ 425.17, subd. (a).)

■ An award of attorney fees to a partially prevailing defendant under section 425.16, subdivision (c) thus involves competing public policies: (1) the public policy to discourage meritless SLAPP claims by compelling a SLAPP plaintiff to bear a defendant's litigation costs incurred to eliminate the claim from the lawsuit; and (2) the public policy to provide a plaintiff who has facially valid claims to exercise his or her constitutional petition rights by filing a complaint and litigating those claims in court. (§§ 425.16, 425.17; see *Ketchum, supra,* 24 Cal.4th at p. 1131.) In balancing these policies, we conclude a defendant should not be entitled to obtain *as a matter of right* his or her entire attorney fees incurred on successful and unsuccessful claims

merely because the attorney work on those claims was overlapping. Instead, the court should first determine the lodestar amount for the hours expended on the successful claims, and, if the work on the successful and unsuccessful causes of action was overlapping, the court should then consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate.

This analysis includes factors such as the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion. The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way. The court should also consider any other applicable relevant factors, such as the experience and abilities of the attorney and the novelty and difficulty of the issues, to adjust the lodestar amount as appropriate. (See *Ketchum, supra*, 24 Cal.4th at p. 1132.)

Applying these principles, we conclude the court erred in failing to reduce the attorney fees award for fees attributable to the causes of action that remained in the litigation. Although the amount to be awarded could not be calculated through a purely mechanical approach by allocating particular hours to particular claims, the court should have considered the significance of the overall relief obtained by defendants in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved. We are required to presume all facts to support the court order (see *Ketchum, supra*, 24 Cal.4th at p. 1140), but the trial court's statement declining to apportion the fees necessarily reflects that the court did not consider defendants' relative lack of success in determining the appropriate amount of fees. Moreover, a reduction of approximately $7,000 to account for defendants' lack of complete success was clearly insufficient.

In this regard, we are unpersuaded by defendants' argument that they are entitled to all of their attorney fees because their efforts established new law in California. The issue of first impression in *Mann*—whether a court should deny an anti-SLAPP motion if the plaintiff proves a probability of prevailing on only a portion of the SLAPP claim—resulted in a holding rejecting *defendants'* legal arguments. (*Mann, supra*, 120 Cal.App.4th at p. 106.) On this issue, we held a plaintiff meets its burden to oppose an anti-SLAPP motion if the plaintiff proves a probability of prevailing on any one theory underlying the claim. (120 Cal.App.4th at p. 106.)

■ Although normally we would remand for the court to exercise its discretion on the issue of the proper amount of attorney fees, we conclude that under the particular circumstances of this case it is appropriate that we perform the analysis here. The basis of the broad discretion afforded to the trial judge in ruling on an attorney fee motion is the judge's familiarity with the proceedings and the work performed by the attorneys. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [5 Cal.Rptr.2d 198, 997 P.2d 511].) Here, the trial judge did not preside over the underlying litigation, and the court did not have firsthand knowledge of the work because defendants did not submit the underlying trial or appellate court briefs to support their attorney fees request. In contrast, this court is familiar with the case and the attorneys' work based on our prior appellate review and the record is sufficiently explicit that we can properly perform the necessary calculations. Additionally, counsel have advised this court that the matter has settled, except for the attorney fees issue. Under these circumstances, it would be wasteful to remand and invite a new round of litigation. (See *Hensley, supra,* 461 U.S. at p. 437 [warning courts against turning fee applications into major collateral litigation].)

After conducting the analysis, we conclude defendants are entitled to recover $32,032.50 (50 percent of the claimed fees). This amount fairly compensates defendants for the results achieved in pursuing the anti-SLAPP motion and avoids reimbursing them for the objectives that were not attained. Militating against compensation, defendants had only limited success, and WSSI was compelled to defend the anti-SLAPP motion notwithstanding that two of the challenged causes of action were not even governed by the anti-SLAPP statute and there were facts showing a probability of prevailing on the defamation cause of action subject to the statute. Further, defendants did not achieve one of their anti-SLAPP objectives—to strike all claims based on defendants' alleged false statements to WSSI's customers.

On the other hand, the practical impact of the motion was far more significant than the mere dismissal of the trade libel cause of action. In *Mann,* we recognized defendants' reports to government agencies were absolutely privileged (Civ. Code, § 47, subd. (b)), thus eliminating any actionable theory arising from the alleged false statements to these agencies. By establishing this legal principle, defendants effectively restricted the factual allegations, reduced viable theories of recovery, limited discovery, lessened the work involved, and permitted both sides to more realistically evaluate liability, damages and future legal expenses. An award of $32,032.50 reflects the fact that defendants prevailed on important issues that materially changed the litigation, but does not reward them for legal efforts that were meritless.

In our view, allowing partially successful defendants to recover virtually all of their fees because the facts and legal theories are so intertwined that they cannot be segregated underestimates the ability of attorneys and experienced trial judges to evaluate the value of legal services associated with limited success. By contrast, an approach that concentrates on the practical impact of a partially successful motion on the overall litigation advances the objectives of the anti-SLAPP statute and minimizes abuses.

## DISPOSITION

We affirm the order to the extent it finds defendants were the prevailing parties on the anti-SLAPP motion, but strike the $57,000 amount awarded and modify the order to award defendants $32,032.50. As so modified, we affirm. Each party to bear its own costs on appeal. No party is entitled to recover attorney fees incurred on this appeal.

McDonald, J., and McIntyre, J., concurred.